UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GUAVA, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:12-cv-08000 ) |
| JOHN DOES 1-5, | ) ) |
| Defendants. | ) Honorable John W. Darrah ) |

OBJECTION TO PLAINTIFF'S MOTION FOR EARLY DISCOVERY

NOW COMES Defendant John Doe 1, by and through counsel, and in support of his objection to Plaintiff's Motion for Early Discovery states as follows:

I. INTRODUCTION, RELEVANT BACKGROUND FACTS AND TECHINICAL BACKGROUND

Plaintiff's motion, and ultimately its underlying claims, should be evaluated in the context in which it was brought. This matter was originally filed in the Circuit Court of Cook County in a matter styled *Guava, LLC v. Skyler Case*, (hereinafter "Guava I"). The allegations in *Guava I*, were identical to those made in the Complaint filed in the instant case. In *Guava I*, the plaintiff and defendant entered an agreed order that authorized Guava to conduct extensive discovery via subpoenas to an unknown number of John Doe subpoena targets to be culled from a list of over 300 Internet Service Providers. John Doe 1 was a subpoena target in *Guava I* and was represented by the undersigned for the purposes of filing a motion to quash and a motion to dismiss[1]. In the motion to quash filed by John Doe 1 in *Guava I*, he disclosed the fact that he is a resident of the State of Florida.

---

[1] The undersigned also represented John Does 2-4 in the instant case when they were subpoena targets in *Guava I*.

During the pendency of *Guava I*, the presiding judge, the Honorable Sanjay T. Tailor, expressed serious doubt as to the legal sufficiency of Guava's claims. In fact, he informed counsel for Guava that he did not see any possible "conspiracy" based upon their detailed explanation of what they allege transpired. Judge Tailor also directly questioned counsel for both Guava and the defendant, Skyler Case, as to whether they were involved in some sort of collusive arrangement because of the unusual nature of the litigation. An agreed order was entered permitting a broad net of discovery of alleged "co-conspirators" whilst defendant had filed an answer in which he admitted both the existence of and his purported participation in said conspiracy. Judge Tailor made it clear that he was concerned that the case was set up as a mechanism to provide the identities of an unknown number of John Doe subpoena targets for counsel for Guava to contact and shake down for settlements, as suggested in the objecting parties' motions to quash.

Ultimately, on October 4, 2012, Judge Tailor entered an order staying all subpoena activity by Guava, requiring counsel for Guava not only to cease issuing any new subpoenas, but also requiring that counsel contact any Internet Service Provider who had not yet responded and notify them of the court's order. (Ex. A). Judge Tailor had made clear that he did not believe there was a conspiracy, and the handwriting was on the wall as to the outcome of the motions filed by the objecting John Doe subpoena targets. A hearing was scheduled for the objecting parties' motions to quash, and before that hearing could take place, Guava filed notice with the Court that they were withdrawing the subpoenas for all of the parties who had objected, so that they could pursue them in another venue. (Ex. B). Guava informed Judge Tailor that: [B]ecause the Movants attempted to act and raise arguments as though they were defendants in this case, Plaintiff granted their wishes and initiated separate litigation against them in which they will now

be actual Defendants. (See Guava I Plaintiff's Omnibus Response to Outstanding Motions at p. 1, a copy of which is attached hereto as Ex. C) Coincidentally, all of the parties whose subpoenas were withdrawn were represented by the undersigned. The language of the withdrawal document makes it clear that the withdrawal of the subpoenas was intended both as punishment for objecting in *Guava I*, and as an effort to forum shop, their claims having failed to convince Judge Tailor that any conspiracy existed. The Complaint in the instant matter was filed the following day, October 5, 2012. [Doc. #1]

On October 17, 2012, Guava filed its first motion for early discovery. [Doc. #5]. The motion had a single exhibit that contained five IP addresses. [Doc. #5, Ex. A]. The undersigned filed her appearance on behalf of John Doe 1 on December 5, 2012. [Doc. #12]. On December 5, 2012, Plaintiff failed to appear for its motion for early discovery. However, on December 6, 2012, Plaintiff filed its amended motion for early discovery. The exhibit to that motion included 34 IP addresses, most of which were represented by the undersigned in *Guava I*, which at that time remained pending.

After Judge Tailor's October 4, 2012 order, and in addition to this suit, Guava filed suits in Massachusetts, Georgia, Washington D.C., Alabama, Arizona and Connecticut, all against the objecting John Doe subpoena targets represented by the undersigned. In each case, Plaintiff sought the identities of the same individuals by IP address in an attempt to multiply the litigation, cause undue burden and expense to the parties, and to harass the John Doe targets into entering into settlement agreements. John Doe 1 received a subpoena notification for the case filed in the Middle District of Georgia, styled *Guava, LLC v. John Doe*, Civil Action No. 5:12-cv-389 (HL), further harassing him after Guava withdrew its subpoena seeking his information in *Guava I* and

3

<u>after</u> the filing of the instant case (the subpoena, issued out of the District of Minnesota to further complicate proceedings, is dated November 12, 2012.) (Ex. D).

The procedural safeguards that ensure defendants a fair chance to present their defenses are crucial in a case such as this. Plaintiff is an entity of unknown legal origin or status. Complaint ¶ 2. But the tactics of its counsel, Prenda Law a/k/a Steele Hansmeier PLLC ("Prenda Law"), are known all too well. Using a slash-and-burn mass litigation business model, they advance claims of dubious merit that never proceed to trial, to extract thousands of individual settlements, regardless of guilt. "The lawyers representing the plaintiffs in these pending cases have to date filed at least 118 such lawsuits against over 15,000 John Does in the last year and a half alone." *Pac. Century Int'l v. John Does 1-37*, No. 12 C 1057, 2012 U.S. Dist. LEXIS 72092, *7-8 (N.D. Ill. Mar. 30, 2012) (discussing consolidated Prenda Law cases). Of those 15,000+ John Does, Prenda Law is not known to have served a single one. *Boy Racer, Inc. v. John Does 1-34*, Case No. 11-23035-Graham/Goodman, slip op. at 2-3 (S.D. Fla. May 4, 2012) (order denying sanctions). The *Pacific Century* Court described "the common arc of the plaintiffs' litigating tactics in those cases" as follows:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.[2]

---

[2] Prenda Law's "dubious methods", include misleading settlement demand letters, robocalls and "using the outré nature of the content itself to pressure people to settle":

> The most famous porn copyright lawyer in the country has a name that seems out of the kind of films that he helps protect—John Steele. The former Chicago-family-lawyer-turned-Florida "porn troll" has, almost singlehandedly, brought the art of suing adult film pirates to the masses: along with his firm, Prenda Law, a boutique agency devoted to anti-piracy lawsuits, he has put his name on 10,000 letters and robocalls strongly suggesting that their recipients pay around $3,000 or risk being sued for $150,000 or more for illegal file-sharing. Even those who believe in the right of copyright holders to protect their products pause when asked about Steele.

*Id*. at *9 (quotation omitted). But Prenda Law has faced growing opposition in the federal courts.[3]

> Finally, the court states that it is troubled by the plaintiff's current position that it needs the requested discovery from the ISP "in order to properly argue jurisdiction before this Court." Although plaintiff's counsel uses the word "argue," he clearly is attempting to obtain factual information necessary to contend that personal jurisdiction is proper in this district. ... Counsel cannot have it both ways: either he is aware of a good faith factual basis to file suit in this district [as counsel had previously represented] or he is not. Counsel is reminded that it is improper to file suit and determine later if there is a good faith basis for personal jurisdiction.

*Millenium TGA, Inc. v. Doe*, 10 C 5603, 2011 U.S. Dist. LEXIS 94746, *4-5 (N.D. Ill. Aug. 24, 2011).

An ISP assigns an identifying number, called an IP address, to each ISP subscriber (like Movants) whose router the ISP connects to the Internet. Complaint ¶ 14; *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). Typically, ISPs assign subscribers a dynamic IP address that changes over time. *United States v. Kearney*, 672 F.3d 81, 89 (1st Cir. 2012). An IP address serves to route traffic efficiently through the network,[4] it does not identify the computer being used or its user.[5] Plaintiff has identified only the IP addresses of routers or wireless access points for accounts it alleges were used to breach its computer systems, *not* the breaching parties. Complaint ¶ 14. "IP subscribers are not necessarily copyright infringers." *VPR Internationale v.*

---

Reyhan Harmanci, *The Pirates And Trolls Of Porn Valley*, BuzzFeed (http://www.buzzfeed.com/reyhan/the-pirates-and-trolls-of-porn-valley). See also, Prenda Law's "Informal Discovery Request" sent to identified, but neither named nor served, alleged infringers (http://fightcopyrighttrolls.com/2012/07/18/new-low-of-prenda-law-trolls-indiscriminately-and-inappropriately-send-out-letter-of-request-for-informal-discovery/).

[3] Several Ars Technica articles have highlighted the federal bench's tepid reception for Prenda Law's campaign, including: *Judge eviscerates IP lawyer: "I accepted you at your word"* (http://arstechnica.com/tech-policy/2011/03/judge-eviscerates-p2p-lawyer-i-accepted-you-at-your-word/); *Judge administers another beatdown to P2P lawyer, severs cases* (http://arstechnica.com/tech-policy/2011/04/judge-administers-another-beatdown-to-p2p-lawyer-severs-cases/); *Settle up: voicemails show P2P porn law firms in action* (http://arstechnica.com/tech-policy/2011/04/settle-up-voicemails-show-p2p-porn-law-firms-in-action/); *Judge: don't bring me any more anonymous file-sharing lawsuits* (http://arstechnica.com/tech-policy/2011/05/judge-dont-bring-me-any-more-anonymous-file-sharing-lawsuits/); *BitTorrent users don't "act in concert," so judge slashes mass P2P case* (http://arstechnica.com/tech-policy/2011/08/bittorrent-users-dont-act-in-concert-so-judge-slashes-mass-p2p-case/).

[4] *Poweroasis, Inc. v. Wayport, Inc.*, Civ. A. No. 04-12023-RWZ, 2007 U.S. Dist. LEXIS 34356, *35-38 (D. Mass. May 10, 2007), *vacated on other grounds*, 273 Fed. Appx. 964 (Fed. Cir. 2008).

[5] "IP addresses specify the locations of the source and destination nodes in the topology of the routing system." Wikipedia, *IP Address*, http://en.wikipedia.org/wiki/IP_address (as of April 18, 2012).

*Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, *3 (N.D. Ill. Apr. 29, 2011) (Prenda Law, for plaintiff). "Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect ... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id*. at *4; see also *Hard Drive Prods. v. John Doe*, Civ. A. No. 11 CV 8333, 2012 U.S. Dist. LEXIS 89937, *6 (N.D. Ill. June 26, 2012) (Prenda Law stating that "while it is common for an account holder to also be an infringer, it is also possible for the account holder and the infringer to be separate persons").[6] Forensics firms often misidentify innocent subscribers as infringers for other reasons, including:

1. IP addresses and timestamps that do not reliably identify the correct party;[7]

2. An ISP subscriber with dynamic IP addressing through its website host shares its IP address with several other subscribers;[8] and

3. Anyone with wireless capability can use a subscriber's wifi network to access the Internet, giving the impression that it is the subscriber who is engaged in potentially wrongful acts.[9]

---

[6] See also *Third Degree Films v. Does 1-3577*, No. C-11-02768 LB, 2011 U.S. Dist. LEXIS 128030, *10 (N.D. Cal. Dec. 15, 2011) ("the ISP subscribers may not be the individuals who infringed upon Plaintiff's copyright") (citations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, Civ. A. No. 11-3995 (DRH) (GRB) 2012 U.S. Dist. LEXIS 61447, *8-9 (E.D.N.Y. May 1, 2012) (citations omitted):

> An IP address ... is no more likely that the subscriber to an IP address carried out a particular computer function ... than to say an individual who pays the telephone bill made a specific telephone call. Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access. ... [A] single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals... Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.

[7] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or Why My Printer Received a DMCA Takedown Notice*, Proceedings of 3rd USENIX Workshop on Hot Topics in Security, at 3 (2008) (http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf); Wikipedia, *IP address spoofing*, http://en.wikipedia.org/wiki/IP_address_spoofing (as of April 18, 2012) ("spoofing" refers to creating a forged IP address with the purpose of concealing the user's identity or impersonating another computing system).

[8] Wikipedia, *Web hosting service*, http://en.wikipedia.org/wiki/Web_hosting_service (as of April 18, 2012).

[9] See, *VPR*, 2011 U.S. Dist. LEXIS 64656, at *3 (discussing raid by federal agents on home of IP subscriber falsely linked to downloading child pornography based on information provided by ISP; "Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections.").

II.     ARGUMENT AND CITATION OF AUTHORITY

A.     <u>Plaintiff Has Not Established That The Court Has Personal Jurisdiction Over John Doe 1</u>.

As a threshold matter, Plaintiff has not met its burden to establish that this Court has personal jurisdiction over the vast majority of the Defendants. Consequently, the Court may not authorize or enforce any discovery Plaintiff seeks about or directed at those Defendants. *See, e.g., Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction). *Accord, United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1084 (1st Cir. 1992) (same).

The constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, the Plaintiff bears the burden of pleading specific facts sufficient to support the Court's exercise of personal jurisdiction over the Defendants. Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of naked legal conclusions; rather, Plaintiff must assert the factual basis underlying its claims. See, e.g., Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010) (holding that "plaintiff bears the burden of establishing personal jurisdiction ... and that burden is met by making a prima facie showing.").

7

B.  Plaintiff Cannot Undertake Discovery To Find Jurisdictional Facts.

To the extent that Plaintiff argues that it be granted leave to seek discovery in support of jurisdiction, this effort too must fail. Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after. Ticketreserve, Inc. v. Viagogo, Inc., 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) ("At minimum, the plaintiff must establish a prima facie showing of personal jurisdiction before discovery will be permitted."); Cent. States, 230 F.3d 934 at 946 (same). It is well within the Court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Morrison v. YTB Int'l.,* 641 F. Supp. 2d 768, 781 n.8 (S.D. Ill. 2009) (denying a discovery request is appropriate where "the requested discovery amounts merely to a fishing expedition"). Where, as here, the Plaintiff's own factual allegations serve to demonstrate the absence of proper jurisdiction; the Court should decline to extend this case further. Moreover, John Doe 1 filed a motion in *Guava I* in which he informed the court and Guava that he lives in Florida. The fact that John Doe 1 does not live in the Northern District has been known to Guava since the fall of 2012. Yet Guava included him as a John Doe defendant here, forcing him to expend time and resources to defend himself and to show the Court that which Guava already knows: Defendant John Doe 1 lives in Florida. Not in Illinois. (See Motion to Quash and Motion to Dismiss filed on behalf of John Doe 1 in *Guava I*, attached hereto as Exhibits E and F, wherein John Doe 1 is identified by IP address as follows: 173.26.146.237).

8

C. <u>Venue For The Action Has Not Been Properly Pleaded</u>.

Plaintiff claims that the Court has personal jurisdiction over Defendants because "upon information and belief, they either reside in or committed copyright infringement within the State of Illinois". (<u>See</u> Complaint, ¶5.)

The location of Plaintiff's "computer systems" is as irrelevant to the venue inquiry as that of any alleged access, distribution, and other activities by third parties not identified as defendants. Complaint ¶ 4. Civil actions arising under the Copyright Act are proper only "where the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a); *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34 (D.D.C. 2011); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1203 (7th Cir. 1997). "Given that the plaintiff has failed to allege facts demonstrating that personal jurisdiction is proper in this district, the court also concludes that venue in this district is improper." *Millenium TGA*, 2011 U.S. Dist. LEXIS 110135, at *8-9.[10]

III. CONCLUSION

Plaintiff is engaging in obvious forum shopping in an attempt to engage this Court, and numerous others, in an endeavor denied to them in the Circuit Court of Cook County in *Guava I*. Plaintiff has presented no evidence that obtaining the identity of John Doe 1 (or any other John Doe in this case) will result in the identification of an actual wrongdoer. Instead, by its own court filings, Plaintiff has demonstrated its intent to harass and unnecessarily duplicate these proceedings in an effort to punish John Doe 1 for filing motions in *Guava I* which resulted in the judge in that case shutting down Plaintiff's subpoena process.

---

[10] See also *id.*, 2011 U.S. Dist. LEXIS 94746, *4-5 (N.D. Ill. Aug. 24, 2011) (contemplating sanctions against Prenda Law, who requested discovery from an ISP "to obtain factual information necessary to contend that personal jurisdiction is proper in this district" after filing suit claiming personal jurisdiction was proper).

Plaintiff's motion for early discovery should be denied. Moreoever, John Doe 1 should be dismissed from this matter, as it is clear, and known to Plaintiff for some time now, that he does not reside in the District and this Court does not have jurisdiction over him.

Respectfully submitted,

/s/ Erin K. Russell

The Russell Firm
233 S. Wacker Drive
84th Floor
Chicago, IL 60606
T: 312-994-2424
F: 312-706-9766
erin@russellfirmchicago.com
ARDC# 6287255

CERTIFICATE OF SERVICE

This is to certify that on February 24, 2013, this document was filed with the Court via the CM/ECF electronic filing system, thereby serving it upon all counsel of record.

/s/ Erin K. Russell