UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUAVA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-8000 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Guava, LLC filed a Complaint against John Doe Defendants 1-5 (the "Doe Defendants") on October 5, 2012. In its Complaint, Guava alleged four counts against the Doe Defendants: (I) computer fraud and abuse; (II) civil conspiracy; (III) conversion arising from unlawful computer-based breaches; and (IV) negligence arising from unlawful computer-based breaches. (*See* Compl.) Guava filed a Motion for Early Discovery on October 17, 2012. On December 5, 2012, the motion was denied without prejudice with leave to re-file; furthermore, the parties were ordered to exchange Rule 26(a)(1) initial disclosures by January 4, 2013. Guava has filed an Amended *Ex Parte* Application for Leave to Take Expedited Discovery. Defendant John Doe 1 has filed an Objection to Guava's Motion for Early Discovery, and the matter is ripe for ruling.

## BACKGROUND

### *The Instant Complaint*

According to its Complaint, Guava is the owner of password-protected websites, which were allegedly hacked by the unknown Doe Defendants and their alleged co-conspirators, using hacked usernames and passwords. (Compl. ¶¶ 1, 18.) Guava identifies itself only as a "limited liability company" that owns and operates "protected computer systems," but does not provide

any information about what types of websites it operates or any additional business information. (Compl. ¶ 2.)  Guava states that it has identified the Doe Defendants and their co-conspirators only by unique Internet Protocol ("IP") addresses that correspond to the date and time at which the hacking activity occurred.  (Compl. ¶¶ 3, 20.)  An IP address is a specific identifying number that Internet Service Providers ("ISPs") assign to each subscriber of its services; the ISP connects a subscriber's router to the internet and allows a subscriber to receive or transmit data.  (*Id.*); *see also First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 245 (N.D. Ill. 2011).

According to Guava, the ISPs typically keep subscribers' personal information only for a short, temporary time before they erase it.  In its present motion, Guava seeks expedited discovery to serve expedited discovery on the ISPs of the IP addresses associated with the Doe Defendants and their co-conspirators.

### Prior and Concurrent Procedural History

Without identifying himself, Defendant John Doe 1 ("Defendant") has filed an objection to Guava's motion.  Defendant urges that Guava's motion be considered in connection with a previous suit filed by Guava in the Circuit Court of Cook County in the matter, *Guava, LLC v. Skyler Case*, 2012-L-007363 ("*Guava I*").  (Def.'s Objection at 1.)  Tellingly, Guava, who is the same party and is represented by the same counsel, Prenda Law, as in the matter of *Guava I*, does not discuss or dispute Defendant's discussion of *Guava I*.

In *Guava I*, Guava stated the same allegations and averred the same four counts as those in the instant Complaint.  Defendant was one of the John Doe defendants served via subpoena in that case and was represented by the same defense counsel.  (*Id.*)  According to Defendant, during the pretrial period in *Guava I*, the presiding judge, the Honorable Sanjay Tailor, expressed doubts as to the legal sufficiency of Guava's claims, specifically with respect to the

claim of civil conspiracy.  (*Id.* at 2.)  Additionally, Judge Tailor questioned counsel for Guava and one of the defendants, Skyler Case, as to whether they had a collusive arrangement in place because of unusual litigation practices between the parties.  (*Id.*)  In particular, those parties had entered an agreed order that permitted a broad net of discovery via subpoenas to numerous John Doe targets from a list of over 300 ISPs.  Furthermore, defendant Skyler Case had filed an answer in which he admitted both the existence of and his participation in the conspiracy alleged by Guava.  (*Id.* at 1-2.)

On October 4, 2012, Judge Tailor entered an order, in which he stayed all subpoenas already issued by Guava, ordered that Guava cease issuing any new subpoenas thereafter, and required Guava to notify all subpoenaed ISPs of the court's order.  (Def.'s Objection, Exh. A.)  Judge Tailor also scheduled a hearing for ruling on Defendant's and other John Does' motions to quash Guava's subpoenas.  However, on the next day, October 5, 2012, Guava filed a notice that it was withdrawing the subpoenas for all the defendants who had objected, so that Guava could pursue those objecting defendants in another venue.  (Def.'s Objection, Exh. B.)  Guava concurrently filed the instant Complaint in this Court against the Doe Defendants that same day.

Following Judge Tailor's Order from *Guava I*, Guava also filed suits, with Prenda Law as counsel, in Alabama, Arizona, Connecticut, Georgia, Massachusetts, and Washington D.C. against the same Doe Defendants listed in this suit.  (Def.'s Objection at 3.)  In each lawsuit, Guava sought the identities of the Doe Defendants through the same methodology utilized in this suit:  filing a motion for expedited discovery to serve subpoenas on relevant ISPs to obtain the personal account information of the Doe Defendants.  (*Id.*)  Defendant has received a subpoena notification for a case filed in the Middle District of Georgia, named *Guava LLC v. John Doe*, Civil Action No. 5:12-cv-00398-HL, which was issued from the United States District Court for

the District of Minnesota. (Def.'s Objection, Exh. D.) Furthermore, as discussed below, counsel for Guava has filed numerous other similar suits against unknown defendants and sought expedited discovery in those cases, as well.

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow parties to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). A district court has "extremely broad discretion in controlling discovery." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). Expedited discovery is permissible in certain circumstances, but it is "not the norm." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).

A plaintiff seeking expedited discovery bears the burden to make a *prima facie* showing of the need for expedited discovery. *Merrill Lynch*, 194 F.R.D. at 623. Furthermore, the courts "must also protect defendants from unfair expedited discovery." *Id.* Therefore, courts will employ a "good cause" standard in determining whether to authorize expedited discovery. *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012). There may be good cause if "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (quoting *Hard Drive Prods, Inc. v. Doe*, No. S-11-3074 KJM CKD, 2012 WL 90412, at *1 (E.D. Cal. Jan. 11, 2012) (internal citations and quotation omitted). The court evaluates "the entirety of the record to date and the *reasonableness* of the request in light of all of the surrounding circumstances . . . ." *Merrill Lynch*, 194 F.R.D. at 624 (emphasis in original); *see also Ibarra v. City of Chi.,* 816 F. Supp. 2d 541, 554 (N.D. Ill.2011).

## ANALYSIS

The aggressive tactics of Guava's counsel, Prenda Law, in litigating John Doe lawsuits have been widely reported and acknowledged by courts, including those in Illinois and California. In *Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012), Judge Holderman, addressing plaintiff's subpoenas on defendants' ISPs, observed that Prenda Law had, as of February 2012, "filed at least 118 such lawsuits against over 15,000 John Does in the last year and a half alone." *See also Hard Drive Prods, Inc. v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, *1 fn.1 (N.D. Cal. Mar. 30, 2012) (finding that the plaintiff, represented by Prenda Law, had filed nineteen cases in the Northern District of California in 2011, and that Prenda Law had filed a significant number of other cases in that district on behalf of similar plaintiffs).

Courts have expressed strong concerns that Prenda Law's aggressive tactics are a means to improperly leverage settlements. *See, e.g., Sunlust Pictures, LLC v. Does 1-75*, No. 12-cv-1546, 2012 WL 3717768, at *5 (N.D. Ill. Aug. 27, 2012) ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations."). In *MCGIP, LLC v. Does 1-149*, No. 11 C 2331, 2011 WL 4352110, at 4n. 5 (N.D. Cal. Sept. 16, 2011), the district court described these litigating tactics:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements — a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged

infringers.

*See also Pacific Century Int'l, Ltd.*, 282 F.R.D. at 193 (quoting *MCGIP, LLC*, 2011 WL 4352110). In *Hard Drive Productions*, 2012 WL 1094653 at *3, Prenda Law admitted that it never served a single defendant in any of the infringement John Doe cases where the court granted early discovery. The *Hard Drive Productions* court further confirmed this admission by Prenda Law through its own research of cases filed in the district. *Id.* at *3 fn.4. Thus, it appears that once Prenda Law obtains the identities of the IP subscribers, its focus is not on serving those defendants but, rather, on pursuing settlements.

Most recently, Judge Otis D. Wright II, in the Central District Court of California, accused Prenda Law, and in particular, Guava's present counsel, Paul Duffy, of bad-faith practice and imposed both monetary sanctions totaling $81,319.72, as well as nonmonetary sanctions. *See Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-8333 ODW (JCx), 2013 WL 1898633 (C.D. Cal. May 6, 2013). The *Ingenuity* court made the following findings of fact with respect to Prenda Law's general business and legal practice, including in part:

> 1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the [plaintiff] entities . . . for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.
>
> 2. [Plaintiff entities] have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.
>
> 3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and

sending cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.

4. This nationwide strategy was highly successful because of statutory copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' accounts and not in accounts belonging to [plaintiff entities]. No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6. The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation-even to the Court. . . .

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' *early-discovery requests*, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

*Id.* at *2-3 (emphasis added). The *Ingenuity* court stated that Prenda Law's litigation strategy was "anticipat[ing] that the Court would blindly approve their early-discovery requests, thereby opening the door to more settlement proceeds." *Id.* at *4. Furthermore, the *Ingenuity* court remarked that Prenda Law's attorneys "suffer from a form of moral turpitude unbecoming of an officer of the court," to an extent that warranted referring Prenda Law to the United States Attorney for the Central District of California and the Criminal Investigation Division of the Internal Revenue Service. *Id.* at *5.

Against this backdrop, Guava's need for expedited discovery and the risk of harm from such discovery must be balanced and evaluated.

*Guava's Need for Expedited Discovery*

Guava contends that there is a need for expedited discovery to issue subpoenas to the ISPs so that Guava may identify the responding Defendant as well as all other Doe Defendants. However, Guava is vague in explaining the underlying purpose of the expedited discovery it seeks and fails to draw a clear connection between the process of issuing the subpoenas and identifying and naming the infringing parties. Guava appears more concerned with obtaining the identities of the Doe Defendants than it is with providing proper notice through service of process: "Guava . . . requests . . . immediate discovery . . . to determine the identities of the Doe Defendants and their co-conspirators" (Pl.'s Appl. at 1); "Guava has a need for expedited discovery of the identities of Doe Defendants and their co-conspirators . . . ," (*Id.* at 5); "[T]he present lawsuit simply cannot proceed without discovering the identities of the Defendants and their co-conspirators." (*Id.* at 6.)

Indeed, Guava makes only a passing mention of a need to provide the Doe Defendants with notice of the suit. (*See id.* at 6.) Considering Prenda Law's admission in *Hard Drive Prods., Inc.*, 2012 WL 1094653 at *3, that it has never "served a single defendant," this raises concerns that Guava's true intent is to leverage settlement demands. *See Ingenuity*, 2013 WL 1898633 at *2 ("[Prenda Law] subpoena[es] Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and send[s] cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.").

Guava's request is also overly broad. The expedited discovery will lead to the discovery of the account subscribers but not necessarily the actual infringers, as any number of people

8

could be using the IP address to hack into Guava's protected websites. *See, e.g., Hard Drive Prods.*, 2012 WL 1094653 at *3 (citation omitted) ("The named ISP subscriber may or may not be the infringer, as Guava acknowledges by saying that it may need to take further discovery even after it locates the subscribers whose IP addresses appeared in the swarm.").

Guava also has not properly supported its contention that the ISPs will erase the account subscribers' information. Guava has not presented any evidence of the specific practices of the ISPs associated with the Doe Defendants' IP addresses. *See, e.g., Quad Intl., Inc. v. Does 1-6*, No. 2:12-cv-2631 LKK KJN, 2013 WL 142865, at *3 fn.6 (finding that Guava's forensic investigator made unsupported and overgeneralized declarations about the short lengths of time that various ISPs preserve subscribers' account information). Guava has therefore failed to make a *prima facie* showing of its need for expedited discovery.

### Balancing the Administration of Justice and Risk of Harm

Furthermore, considering the administration of justice and the risk of prejudice to the Doe Defendants weighs against a finding of a good cause for the expedited discovery. *See Merrill Lynch*, 194 F.R.D. at 623-24. As discussed above, there is a real concern that Prenda Law seeks to use expedited discovery as a means to improperly leverage settlements. For this reason, the administration of justice weighs against granting Plaintiff's request.

### Personal Jurisdiction

Defendant argues that Plaintiff has failed to sufficiently allege that personal jurisdiction exists over the majority of Defendants and, therefore, Plaintiff has failed to carry its burden of establishing personal jurisdiction. Plaintiff responds this argument is premature and that

personal jurisdiction is an affirmative defense that can be raised only after a party is named and served as a defendant.

Courts that have addressed similar cases have held that such challenges to personal jurisdiction are premature until a party has been named as a defendant. *See, e.g., First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 251 (N.D. Ill. 2011) (personal jurisdiction argument was premature but would be relevant once defendants were named as parties); *Safety Point Productions, LLC v. Does 1-57*, No. 3:12–CV–601, 2013 WL 1398585, at *1 (E.D. Tenn. Apr. 5, 2013) (following *First Time Videos, LLC*); *Canal St. Films v. Does 1-22*, No. 13-cv-999, 2013 WL 1775063, at *2n1 (M.D. Pa. Apr. 25, 2013) (holding that plaintiff's factual assertion based on IP address as to John Doe defendants' location established personal jurisdiction for purposes of expedited discovery motion but that issue would be reexamined upon a contrary showing by a defendant). In this case, Plaintiff has alleged that it has traced the IP address of each Defendant to a point of origin in Illinois. (Compl. ¶ 5.) This allegation is sufficient for personal jurisdiction for purposes of Plaintiff's motion; however, this issue may be revisited once the Defendants are named as parties in this action.

## CONCLUSION

For the foregoing reasons, Guava's Amended *Ex Parte* Application for Leave to Take Expedited Discovery [10] is hereby denied.

Date: __June 27, 2013__          _____
JOHN W. DARRAH
United States District Court Judge